IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 27, 2006

## STATE OF TENNESSEE v. MARVIN L. LOCKE

**Appeal from the Criminal Court for Bradley County**
**No. M-03-786     Carroll L. Ross, Judge**

---

### No. E2005-01359-CCA-R3-CD Filed September 18, 2006

---

The defendant, Marvin L. Locke, appeals from his Bradley County Criminal Court convictions of selling methamphetamine, a schedule II controlled substance, in a school zone; possession of methamphetamine in a school zone with intent to sell; unlawful possession of a firearm; and possession of drug paraphernalia. The trial court imposed an effective sentence of eight years. On appeal, the defendant challenges the sufficiency of the evidence that the sale and possession of methamphetamine (the subjects, respectively, of the first two counts of the indictment) occurred within 1,000 feet of a school. Following our review of the case, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3; Judgments of the Criminal Court are Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and ROBERT W. WEDEMEYER, J., joined.

Randy G. Rogers, Athens, Tennessee, for the Appellant, Marvin L. Locke.

Paul G. Summers, Attorney General & Reporter; Blind Akrawi, Assistant Attorney General; Jerry N. Estes, District Attorney General; and Shari Young, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

When an accused challenges the sufficiency of the evidence, an appellate court inspects the evidentiary landscape, including the direct and circumstantial contours, from the vantage point most agreeable to the prosecution. The reviewing court then decides whether the evidence and the inferences that flow therefrom permit any rational fact finder to conclude beyond a reasonable doubt that the defendant is guilty of the charged crime. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); *State v. Duncan*, 698 S.W.2d 63, 67 (Tenn. 1985). In determining sufficiency of the proof, the appellate court does not replay or reweigh the evidence. *See State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Witness

credibility, the weight and value of the evidence, and factual disputes are entrusted to the finder of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *Farmer v. State*, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). Simply stated, the reviewing court will not substitute its judgment for that of the trier of fact. Instead, the court extends to the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences that may be drawn from the evidence. *See Cabbage*, 571 S.W.2d at 835.

As viewed in the light most favorable to the state, the evidence establishes that on May 29, 2002, a woman named Angie Lane contacted the Cleveland Police Department and offered to serve as a drug informant for pay. After the police agreed to compensate her $200, she telephoned the defendant, with whom she was acquainted and who was a construction contractor by trade. She made arrangements to purchase methamphetamine from the defendant for $225 and to meet him near a Cleveland cinema. The officers provided Ms. Lane $225 in currency for the drug purchase and kept the rendevous site under surveillance. When the defendant arrived in a truck, Ms. Lane entered the truck, and the defendant drove away. The officers followed the truck to a car wash located across the street from Bradley Central High School. The defendant drove the truck into a car wash bay, with the front of the truck facing the school.

One of the officers testified at trial that the car wash bay was directly across the street from the field fronting the school buildings. He estimated that the street-front edge of the field was about 60 feet from the bay where the defendant parked his truck. He further estimated that the nearest school building was one-tenth of a mile (528 feet) from the bay, although he also estimated this distance to be 800 to 900 feet. He testified that, although he did not know the ownership of the field, he had seen high school students practicing sports on the field. Another officer testified that he had seen soccer games being played in the field, although he could not testify that the participants were Bradley Central students. He testified that the street between the car wash and the field is designated by signs as a school zone and subject to a 20 miles-per-hour speed limit. Ms. Lane testified that the Bradley Central High School buildings were visible from where the truck was parked in the car wash bay.

After a short time in the car wash bay, the defendant drove back to the cinema and let Ms. Lane out where her car was parked.

Afterward, Ms. Lane delivered 2.2 grams of methamphetamine to the police. Some of the officers had continued to follow the defendant, ultimately stopping him for traffic violations. When these officers learned during the stop that the substance presented by Ms. Lane had been field-tested to be methamphetamine, they searched the defendant's truck and found a 6.6-gram "rock" of methamphetamine, a .22 semi-automatic pistol, and a kit containing drug paraphernalia. They also found in the defendant's pocket $225 in currency that matched the serial numbers of the currency provided to Ms. Lane for the drug purchase.

At trial the defendant claimed that the transfer of methamphetamine to Ms. Lane was a casual exchange between friends and that the state failed to prove that the defendant's transfer and

possession of methamphetamine occurred within 1,000 feet of a school. During the trial, the defendant pleaded guilty to count four, possession of drug paraphernalia, and the jury convicted him on the other three counts. On appeal, the defendant raises only the issue whether the evidence sufficiently established that the drug transaction occurred within 1,000 feet of the high school.

Methamphetamine is a schedule II controlled substance. Tenn. Code Ann. § 39-17-408(d)(2) (2003). Pursuant to Tennessee Code Annotated section 39-17-417(a), it is an offense to knowingly sell or possess a controlled substance with intent to sell it. *Id.* § 39-17-417(a) (2003). On May 29, 2002, an offense of selling or possessing with intent to sell methamphetamine was a Class C felony. *Id.* § 39-17-417(c)(1) (2003) (amended in 2004, Pub. Acts ch. 845, §§ 1-3, to proscribe sale or possession with intent to sell .5 grams or more of methamphetamine as a Class B felony).

The Tennessee Code Annotated section 39-17-432 in effect at the time of the offenses establishes drug-free school zones, with the purpose of "providing all students in this state an environment in which they can learn without the distractions and dangers that are incident to the occurrence of drug activy in and around school facilities." *Id.* § 39-17-432(a) (2003). The section establishes "enhanced and mandatory minimum sentences required . . . for drug offenses occurring in a Drug-Free School Zone." *Id.* Thus, a violation of Code section 39-17-417

> that occurs on the grounds or facilities of any school or within one thousand feet (1,000') of the real property that comprises a public or private elementary school, middle school, or secondary school shall be punished one (1) classification higher than is provided in § 39-17-417(b)-(i) for such violation.

*Id.* § 39-17-432(b) (2003). As a result of this provision, the defendant was convicted of Class B felonies on the first two counts of the indictment.

The defendant claims on appeal that, although testimony established that the field lying between the high school buildings and the street was within 60 feet of the car wash bay, the state failed to establish the ownership of the field. *See State v. Jenkins*, 15 S.W.3d 914, 918 (Tenn. Crim. App. 1999) (commenting that the statute contemplates measuring "the enhanced penalty region from the perimeter of the grounds of a school"). We conclude, however, that the proximity of the field to the drug transaction is inconsequential in light of positive testimony that a school *building* was situated 800 to 900 feet from the site of the drug transaction. Thus, regardless of whether the field constituted real property of the school, the jury heard evidence that an actual school building was situated less than 1,000 feet from the site of the drug transaction. Such evidence was sufficient to locate the offenses described in counts one and two within a drug-free school zone.

Accordingly, we affirm the defendant's convictions of Class B felonies.

_____
JAMES CURWOOD WITT, JR., JUDGE